IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES DILLON,
    Plaintiff,

v.                                  Case No: 3:05cv188/LAC/MD

JEB BUSH, individually and as Governor
of the State of Florida, et al.,
    Defendants.

## REPORT AND RECOMMENDATION

Before the court are three motions to dismiss. The first motion to dismiss pursuant to Rule 12(b)(6) was filed by defendant Susan Page, who contends: (1) that the complaint does not show that she is or was a state actor, nor can it, and she therefore cannot be subject to liability under 42 U.S.C. § 1983; (2) that the complaint does not allege a legally protected interest possessed by the plaintiff that was supposedly violated by this defendant; and (3) that the complaint establishes that there is no factual connection between this defendant's counseling of the children and any interference with plaintiff's parental rights. (Doc. 9). Plaintiff has responded in opposition to the motion. (Doc. 13).

The second motion to dismiss pursuant to Rule 12(b)(6) was filed by defendant Claudia Woodman, who contends that the complaint fails to allege that she took any action under color of law to deprive plaintiff of any right secured by the Constitution or Florida law. (Doc. 18). Plaintiff has responded in opposition to the motion. (Doc. 22).

The third motion to dismiss pursuant to Rule 12(b)(6) was filed by defendants Jeb Bush, Lucy Hadi, Mark Roper, Inga Anderson and Donna Parrish (hereafter "State Defendants"), who contend: (1) that the complaint fails to state a cognizable

section 1983 substantive or procedural due process violation under the First, Fifth, Ninth or Fourteenth Amendments to the United States Constitution; (2) that the complaint fails to allege participation by, or a causal connection of, each state defendant to any alleged constitutional deprivation; (3) that the complaint fails to state a claim for relief based on the Fifth Amendment; (4) that to the extent they are sued in their official capacities they are entitled to absolute immunity; (5) that the complaint makes no claim for damages with respect to their individual capacities, and if such a claim were made, they would be entitled to qualified immunity; (6) that the complaint fails to state a claim for declaratory or injunctive relief; (7) that plaintiff lacks standing to make a claim for declaratory or injunctive relief; (8) that plaintiff has failed to state a claim for relief for conspiracy; and (9) that this court should abstain from considering plaintiff's claims based on the *Younger* Doctrine, discussed below. (Doc. 21). Plaintiff has responded in opposition to the motion. (Doc. 23).

It is not necessary to address the various claims and defenses raised, nor to rule specifically on all grounds of the motions to dismiss. Under the doctrine set forth in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), this federal district court should abstain from exercising its jurisdiction over plaintiff's claims.

## BACKGROUND

On May 20, 2005 plaintiff commenced this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983. He names nine defendants: Jeb Bush, individually and as Governor of the State of Florida; Lucy Hadi, individually and as Secretary of the Department of Children and Families ("DCF"); Claudia Woodman, individually and as representative of the Federal Funding Unit;[1] Mark Roper,

---

[1]The court cannot discern from any of the pleadings what the "Federal Funding Unit" is or what it does. Plaintiff's complaint merely asserts in vague terms that DCF's child abuse investigations were funded by this entity (doc. 31, ¶ 34), and that DCF "counted on [Susan Page's] certification so as to conduct more and more investigations while the Federal Funding Unit supplemented the hoax," (*id.*, ¶69). A WestLaw search of the term "Federal Funding Unit" in federal and state statutory and caselaw databases produced no results.

individually and as representative of DCF; Inga Anderson, individually and as representative of DCF; Donna Parish, individually and as representative of DCF; Susan Page, individually and as a State licensed entity; Cindy Markert, individually;[2] and Sven Markert, individually.[3] Plaintiff alleges that defendants, acting individually and in concert, have deprived him of his "right to be a parent to his children" under the First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution. He also asserts violation of the Florida Constitution, § 2. (Doc. 31, ¶¶ 6-8).

      The following is a brief summary of plaintiff's allegations. Plaintiff and defendant Cindy Markert divorced in 2001. That year, defendant Cindy Markert began making child abuse allegations against plaintiff. In 2002 after moving the children from Georgia to Florida, defendant Cindy Markert made such an allegation to a therapist who, in turn, reported it to DCF. Defendant Donna Parrish, an employee of DCF, began an investigation. This investigation eventually yielded "a negative finding." While the Parrish investigation was pending, defendants Cindy and Sven Markert obtained the assistance of defendant Susan Page, a therapist, to convince plaintiff's children that plaintiff had sexually molested them throughout their lives, when in fact no such molestation ever took place. In 2003 a number of calls were made to the Florida child abuse hotline alleging abuse of one or more of the minor children by plaintiff. These reports resulted in an investigation by another DCF employee, Inga Anderson. Defendant Anderson found the reports unsubstantiated. In June of 2004, three of the minor children made new allegations against plaintiff in Georgia. Criminal charges were filed in Georgia but later dismissed. During that time additional reports of abuse were made against plaintiff in Florida. As a result, in August of 2004 the children were placed on shelter status, and defendant Mark Roper of DCF filed a petition for dependency. (Doc. 31, ¶ 5, 49, 62, 64, 82). Plaintiff asserts that DCF's actions were motivated by the desire to obtain money through the Federal Funding Unit. Plaintiff seeks to hold the Federal Funding Unit liable because they "supplemented the hoax." Plaintiff contends that

---

[2] Ms. Markert is plaintiff's former wife.

[3] Mr. Markert is Cindy Markert's husband.

as a result of these investigations and the dependency proceeding, he has not been allowed to see his children for significant periods of time and, when contact has been allowed, it has been severely limited. According to plaintiff, the defendants' actions have caused him to suffer the loss of consortium with his children, psychological pain (post-traumatic stress disorder), mental anguish and economic harm. As relief, plaintiff seeks compensatory damages in the amount of one million dollars and punitive damages in the amount of one hundred million dollars. In addition, he seeks the following declaratory and injunctive relief:

>  1. Granting Plaintiff a judgment declaring that the Defendant's [sic] actions in severing Plaintiff's parent-child relationships were in violation of Plaintiff's federal constitutional rights and contrary to Florida State law; and further,
>
>  2. Issuing an Order enjoining Defendants [sic] policies, practices and customs of severing said ties; and further,
>
>  3. Issuing an Order enjoining defendants from severing parent-child ties; and further,
>
>  4. Granting Plaintiff a judgment directing that he be reunited with his children; and further,
>
>  5. Granting Plaintiff preliminary and permanent injunctive relief enjoining defendant from continuing to violate Plaintiff's rights under the aforementioned Amendments to the United States Constitution. . . .

(Doc. 31, p. 26).

## DISCUSSION

It is well settled that "[f]ederal courts should abstain from exercising their jurisdiction if doing so would 'disregard the comity between the States and the National Government.'" *Wexler v. Lepore*, 385 F.3d 1336, 1339 (11th Cir. 2004) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987)). While abstention "remains 'the exception, not the rule' to the federal courts' 'virtually unflagging' duty 'to adjudicate claims within their jurisdiction,'" *Wexler* at 1339 (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989)), it "espouses a strong federal

policy," *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). *See also 31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir.) ("While non-abstention remains the rule, the *Younger* exception is an important one."), *cert. denied*, 540 U.S. 984, 124 S.Ct. 483, 157 L.Ed.2d 376 (2003). In determining whether abstention under *Younger* is warranted, a court must consider three factors: (1) whether there is an ongoing state judicial proceeding, (2) whether the proceeding implicates important state interests, and (3) whether there is an adequate opportunity to raise constitutional challenges in the state proceeding. *Middlesex*, 457 U.S. at 432, 102 S.Ct. at 2521; *Shuler v. Meredith*, No. 04-13251, 2005 WL 1787857 at *1 (11th Cir. July 28, 2005) (unpublished decision).

  The parties in this case do not appear to dispute that a state dependency proceeding involving plaintiff's children is ongoing.[4] Plaintiff contends, however, that abstention is not required because "this action bears no relation to the state cause of action, and will not displace Florida's state system of justice." (Doc. 23 ¶40). Indeed, the Eleventh Circuit has held that "an essential part of the first *Middlesex* factor in *Younger* abstention analysis is whether the federal proceeding will interfere with an ongoing state court proceeding. If there is no interference, then abstention is not required." *31 Foster Children v. Bush*, 329 F.3d at 1276. Thus, this court must decide whether this federal proceeding, if allowed to go forward, would interfere with the state dependency proceeding. In so doing the court looks to the relief sought and the effect it would have on the state proceeding. *Id.* (citing *O'Shea v. Littleton*, 414 U.S. 488, 499-502, 94 S.Ct. 669, 677-79, 38 L.Ed.2d 674 (1974); *Luckey v. Miller*, 976 F.2d 673, 679 (11th Cir. 1992) ("*Luckey V*") (*Younger* and *O'Shea* require "focus on the likely result of an attempt to enforce an order of the nature sought here")). The court is mindful that "[t]he relief sought need not directly interfere with an ongoing proceeding or terminate an ongoing proceeding in order for *Younger* abstention to be required." *31 Foster Children*, 329 F.3d at 1276.

---

[4] Indeed, an attachment to plaintiff's "Affirmations" filed in response to the motions to dismiss includes a letter that was filed in the state dependency proceeding just days before this suit was commenced. *See* Doc. 13, ex. B; Doc. 23, ex. A; Doc. 24, ex. A.

Here, plaintiff seeks a judgment "directing that he be reunited with his children." He further seeks an order of this court prohibiting the defendants from engaging in any act which could be construed as "severing Plaintiff's parent-child relationship," or interfering with his "right to parent." Whether the effect of this federal judgment and injunctive relief will interfere with the state dependency proceeding depends in part upon the nature and extent of that proceeding. Under Florida law, the receipt of an oral or written report of known or suspected child abuse by the central abuse hotline requires a protective investigation by DCF. Fla. Stat. § 39.301. After the investigation is complete, DCF must determine whether the child is in need of the protection and supervision of the court. If so, DCF must file a petition for dependency. *Id.* § 39.301(8)(b).

The Eleventh Circuit has noted that Florida's trial level courts "play a critically important role in dependency hearings from the outset of a child's case." *31 Foster Children* at 1277. After DCF files a petition for dependency, the court holds an adjudicatory hearing as soon as practicable. Fla. Stat. § 39.507. If the court finds that the child is not dependent, it enters an order so finding and dismissing the case. *Id.* §39.507(4). If the facts alleged in the dependency petition are proven in the adjudicatory hearing, but the court finds that no action other than supervision is required, it enters an order withholding an order of adjudication and placing the child's home under the supervision of DCF. *Id.* §39.507(5).[5] Finally, if the facts alleged in the dependency petition are proven in the adjudicatory hearing and the child is determined to be dependent, the state court conducts a disposition hearing. *Id.* §§ 39.507(7); 39.521(1). The Department must develop a written case plan and a predisposition study and file these items with the court no later than 72 hours before the disposition hearing. *Id.* § 39.521(1)(a).

The case plan "follows the child from the provision of voluntary services through any dependency, foster care, or termination of parental rights proceeding or related activity or process." *Id.* § 39.01(11). It must include, among other items,

---

[5]If the subject parent is later found to have not complied with the conditions of supervision imposed, the child is determined to be dependent. Fla. Stat. § 39.507(5).

*Case No: 3:05cv188/LAC/MD*

a description of the minimum number of face-to-face meetings to be held each month between the parents and the DCF caseworker to review the progress of the plan, a description of the problem being addressed that includes the behavior of the parent resulting in risk to the child and the reason for DCF's intervention, a description of the tasks the subject parent must perform and the services to be provided to the parent and child specifically addressing the identified problem, and a description of the measurable objective including time frames for achieving objectives.  *Id.* §§ 39.601(1)(c), (2)(a)-(c).  The case plan must be approved by the court.  *Id.* §§ 39.601(2),(3); 39.603.  If, at the hearing on the case plan which occurs in conjunction with the disposition hearing, the court determines that any of the elements required in the plan are not present, it can order DCF to amend the plan to include necessary items.  *Id.* § 39.603(2).

The state court has continuing jurisdiction over a dependency case and must review the status of the child and hold a hearing at least every six months.  *Id.* § 39.701(1)(a).  Prior to each review hearing DCF must furnish to the court a written report that includes, among other items, a description of the placement of the child, including the safety of the child and the necessity and appropriateness of the placement; documentation of the efforts made by the parties to the case plan to comply with the plan; a statement whether the parent either complied or did not comply substantially with the case plan; a statement concerning the frequency, duration and results of the parent-child visitation and DCF's recommendations for an expansion or restriction of future visitation; and copies of all medical, psychological, and education records that support the terms of the case plan.  *Id.* § 39.701(6)(a). At the review hearing, the court considers the written report prepared by DCF and any other probative written and oral reports.  The court also considers the testimony by DCF or other social services agency, the parent, the guardian ad litem and any other person deemed appropriate.  *Id.* § 39.701(7).  The parent has the opportunity at the review hearing to request that the court review any provision of the case plan with which the parent disagrees.  *Id.* § 39.601(4).  The court then determines whether there has been compliance with the case plan; the frequency,

duration and results of parent-child visitation; and the appropriateness of the child's current placement. *Id*. § 39.701(7)(d)(e)(g). The court may extend the time limitation of the case plan or modify its terms. *Id.*, § 39.701(8)(d). If the court finds that the parent has failed to substantially comply with the case plan to the degree that further reunification efforts are not in the best interest of the child, the court may authorize the filing of a petition for termination of parental rights. *Id.*, § 39.701(8)(e). If DCF has not complied with the case plan, the court may find it in contempt. *Id.* § 39.701(8)(c).

The state court can also issue protective orders. The protective order may set forth additional requirements than those set forth in the case plan concerning reasonable conditions of behavior to be observed for a specified period of time by a person or agency. The order may also require periodic report to the court containing such information as the court in its discretion may prescribe. *Id*. § 39.701(g).

In this case, it is difficult to imagine how the judgment and injunction plaintiff requests would <u>not</u> interfere with the state dependency proceeding. This court ordering the immediate reunification of plaintiff and his children could well conflict with what the state court deems best for the plaintiff's children. Similarly, an order by this court enjoining defendants from engaging in any act in furtherance of "severing Plaintiff's parent-child relationships" would restrict their participation in the state dependency proceeding in such a way as to render it meaningless or bring it to a halt. Moreover, the federal injunctive relief sought would curtail any future protective investigations, dependency proceedings or termination of parental rights proceedings. *Cf. 31 Foster Children*, 329 F.3d at 1278-79 and n.11 (abstaining from entertaining challenge by foster children who were subject of ongoing state dependency proceedings where the relief sought "would interfere with the ongoing state dependency proceedings by placing decisions that are now in the hands of the state courts under the direction of the federal district court;" specifically rejecting plaintiffs' argument that the requested injunctive relief would not interfere with the

state dependency proceeding because it was directed at DCF and not the state courts).  The court concludes that the first *Middlesex* factor is satisfied.

The second *Middlesex* factor is met, as the Eleventh Circuit has concluded that for purposes of *Middlesex* analysis, the State of Florida has an important interest in dependency proceedings.  *31 Foster Children*, 329 F.3d at 1275 ("[T]he parties . . . agree, and so do we, that important state interests are involved" in dependency proceedings.).

As for the third and final factor, whether plaintiff has an avenue to raise his constitutional claims in the state proceeding, the plaintiff has the burden of establishing that the state proceedings do not provide an adequate remedy for his constitutional claims.  *31 Foster Children* at 1279.  "Minimal respect for the state processes, of course, precludes any *presumption* that the state courts will not safeguard federal constitutional rights."  *Middlesex*, 457 U.S. at 431, 102 S.Ct. at 2521.  A federal court "should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987).  The plaintiff must overcome this initial presumption by demonstrating that the state remedies are inadequate.  *31 Foster Children* at 1279.  In this case, there is no allegation by plaintiff that the state dependency proceedings do not provide him with an opportunity to raise his claims.  Thus, the final *Middlesex* factor is satisfied.  *See 31 Foster Children* at 1281 ("There are no procedural constraints preventing [the plaintiffs] from presenting the [constitutional] claims in this case to the state courts in their dependency review hearings.  They have not provided unambiguous authority establishing that the procedures available in state court dependency proceedings do not provide an adequate opportunity for them to raise their constitutional claims.").

## CONCLUSION

Based on the foregoing, the undersigned concludes that this court should abstain from exercising jurisdiction over plaintiff's claims under the *Younger*

Doctrine. *See, e.g., Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 608-9, 46 L.Ed.2d 561 (1976) (reversing lower court's decision to "[inject] itself by injunctive decree into the internal disciplinary affairs" of municipal and state agencies); *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974) (rejecting challenge to state criminal justice system "aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials") *Luckey V*, 976 F.2d at 677-79 (abstaining when requested relief would, "inevitably, interfere with every state criminal proceeding"); *Shuler v. Meredith*, No. 04-13251, 2005 WL 1787857 at *1 (11th Cir. July 28, 2005) (unpublished decision) (affirming dismissal of § 1983 complaint on *Younger* abstention grounds where plaintiff sued DCF and private individuals for damages and injunctive relief claiming violations of his due process rights during several state court proceedings, shelter placements, case plans, and judicial review hearings related to the placement of his three minor children in foster care; finding that the state proceedings were ongoing, the State of Florida had an interest in dependency proceedings and terminating parental rights where appropriate, and that plaintiff failed to demonstrate that he did not have an adequate opportunity to raise his claims in the state court or that the state court's remedies were inadequate).

Accordingly, it is respectfully RECOMMENDED:

That this case be DISMISSED without prejudice and the clerk be directed to close the file.

At Pensacola, Florida this 18th day of August, 2005.

/s/ *Miles Davis*
MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**